## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN PETERNEL,<br><br>    Plaintiff,<br><br>    v.<br><br>PETE BUTTIGIEG, SECRETARY, U.S.<br>DEPARTMENT OF TRANSPORTATION,<br>IN HIS OFFICIAL CAPACITY,<br><br>    Defendant. | Civil Action No. 23-670 (BAH)<br><br>Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

Plaintiff John Peternel initiated this suit against defendant Pete Buttigieg, Secretary of the U.S. Department of Transportation ("DOT"), in his official capacity, alleging one count of retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq. See generally* Am. Compl., ECF No. 9.  Defendant now seeks partial dismissal of the retaliation claims that pre-date plaintiff's protected activity as well as those relying on allegedly retaliatory actions that are not objectively materially adverse.  *See* Def.'s Partial Mot. to Dismiss ("Def.'s Mot.") at 1, ECF No. 11.  For the reasons discussed below, defendant's motion is granted in part and denied in part.

## I.  BACKGROUND

The factual background and procedural history of the instant matter are summarized below.

### A.  Factual Background

Plaintiff, a 51-year-old man, has been employed since November 2015 as an Industry Economist in the Regulatory and Grant Economic Division of the Federal Railroad

Administration ("FRA") within the DOT.  Am. Compl. ¶¶ 2, 11.  In November 2016, plaintiff was promoted from the GS-12 to the GS-13 level, but has obtained no promotions to higher levels, despite being eligible for the GS-14 level as of November 2017.  *Id.* ¶¶ 11–12, 15.

Marc Fuller, a 44-year-old Staff Director, became plaintiff's direct supervisor in June 2017, and has allegedly subjected plaintiff to "increasing levels of scrutiny" and has repeatedly refused to promote him to the GS-14 level.  *Id.* ¶¶ 13–15.[1]  Fuller allegedly informed plaintiff that, to be promoted, he would have to take a rulemaking from beginning to end, but "[e]ach time Plaintiff took a rulemaking from beginning to end, [] Fuller manufactured a reason why that rulemaking did not count towards Plaintiff's promotion."  *Id.* ¶ 19.

Economists in plaintiff's position are subject to yearly performance appraisals that affect their annual bonuses and may receive one of four final ratings: Unacceptable; Achieved Results; Exceeded Expectations; or Outstanding.  *Id.* ¶¶ 20, 22.  These final ratings are based on four job elements, which are, in turn, determined by whether an economist meets certain performance targets.  *Id.* ¶ 21.  For the 2017–2018 year, plaintiff received an Exceeded Expectations rating, but in the following 2018–2019 year, he received a lower Achieved Results rating.  *Id.* ¶¶ 23–24.  On July 11, 2019, plaintiff met with Fuller to discuss his Achieved Results rating and possible paths to promotion.  *Id.* ¶¶ 25–26.  Fuller allegedly had "no meaningful explanation" for plaintiff's rating and informed plaintiff that his current rulemaking was "too simple" to count towards his promotion path, that plaintiff was "not assigned any work that would allow him to show his ability to work" at the GS-14 level, and that plaintiff "for the foreseeable future would not be assigned any such work."  *Id.*  Dissatisfied with this discussion, plaintiff challenged his

---

[1]      Since Fuller took over as Staff Director, he has allegedly supervised plaintiff and eight other economists.  Am. Compl. ¶ 16.  Of the eight other economists—none of whom have allegedly engaged in EEO activity—four were promoted by Fuller from the GS-13 to the GS-14 level, and the remaining four had already been promoted to the GS-14 level by the time Fuller took over as Staff Director.  *Id.* ¶¶ 17–18.

Achieved Results rating through FRA's formal grievance and appeal process, and his rating was bumped up one level to Exceeded Expectations.  *Id.* ¶ 25.

On July 15, 2019, plaintiff met with Karl Alexy, plaintiff's second-line supervisor, to share and discuss his feelings that "Fuller was intentionally suppressing his ability" to be promoted because plaintiff is "old."  *Id.* ¶ 29.  The next day, Fuller assigned plaintiff a rulemaking named "Brakes III."  *Id.* ¶ 30.  Although plaintiff successfully completed the rulemaking, Fuller denied plaintiff a promotion because he allegedly delegated the "most important" work to another economist—a characterization plaintiff disputes.  *Id.*  On August 2, 2019, plaintiff emailed Alexy to reiterate his concerns about age discrimination by Fuller, and on August 4, 2019, plaintiff filed an informal Equal Employment Opportunity ("EEO") complaint of age discrimination with FRA's Office of Civil Rights ("OCR").  *Id.* ¶¶ 31–32.

Plaintiff enumerates several allegedly adverse actions occurring in 2019 post-dating his first EEO complaint, including:

- On August 16, 2019, Fuller identified a minor error "that had first appeared seven weeks prior" in plaintiff's Economics Weekly Update report, a performance target used to determine one of the job elements that affects an employee's final job rating, and retroactively rated plaintiff's work for these seven weeks "No." *Id.* ¶¶ 33–34.[2]
- On August 17, 2019, Fuller gave plaintiff a time off award instead of a cash award, even though plaintiff specifically asked for a cash award and every other economist received a cash award. *Id.* ¶ 39.
- On December 30, 2019, Fuller gave plaintiff an Achieved Results rating for his midterm evaluation for the 2019–2020 year, resulting in a final rating of Achieved Results for the full 2019–2020 year and reducing plaintiff's bonus award. *Id.* ¶¶ 44, 50.[3]

---

[2]      Economists are rated on these weekly reports on a "Yes" or "No" grading scale; they receive a "Yes" if they submit their report "on time with correct numbers," and are otherwise "supposed to receive a 'No.'"  Am. Compl. ¶ 35.  Despite these rules, several economists allegedly did not receive a "No" for similar minor errors, much less a retroactive changing of their grade for the week to a "No."  *Id.* ¶¶ 37–38.

[3]      The Amended Complaint states that plaintiff received a rating of "Achieved Expectations," Am. Compl. ¶ 50, but this is, presumably, a typographical error, since according to plaintiff, no such rating exists, *id.* ¶ 20. Plaintiff further alleges that Fuller altered his 2019–2020 final rating without his knowledge or consent in June and July 2020 but does not explain how the rating changed or why plaintiff's consent would be necessary.  *Id.* ¶ 53.

Based on this alleged conduct in 2019, plaintiff filed, on February 3, 2020, a second

informal complaint with FRA's OCR based on age discrimination, *id.* ¶ 45, but the alleged

adverse actions continue throughout that year, including, for example:

- On February 27, 2020, Fuller issued a Letter of Counseling ("February 2020 Letter") addressing plaintiff's "discourteous conduct while discussing work-related issues" and advising that plaintiff's "failure to correct his conduct may subject him to severe disciplinary or adverse action, including removal from Federal service."  *Id.* ¶ 46.
- In March 2020, Fuller reassigned plaintiff to spend 20% of his time on Paperwork Reduction Act duties.  *Id.* ¶ 47.
- In mid-September 2020, Fuller reprimanded plaintiff for raising his allegations of discrimination at a staff meeting and encouraged plaintiff to take a poor communicator class.  *Id.* ¶ 54.
- On September 23, 2020, FRA's HR Director Mark Atkisson denied plaintiff's "request for a lateral transfer and advised him to apply for positions with lower promotional potential than his current position, or to seek employment elsewhere."  *Id.* ¶ 56.
- On October 9, 2020, Fuller issued a Letter of Reprimand ("October 2020 Letter") in response to plaintiff's efforts to discuss and raise his EEO concerns with his coworkers, which stated: "I am placing you on notice that you[r] behavior needs to change immediately and I expect you will take appropriate corrective action to ensure there is improvement and another incident does not occur.  Your failure to follow these instructions, may subject you to more severe disciplinary or adverse action, up to and including removal from Federal service."  *Id.* ¶¶ 58–59.
- Beginning in October 2020 and continuing through November 18, 2020, Fuller sent plaintiff "emails documenting the results of their weekly meetings, which he [did] not send to other similarly situated" economists.  *Id.* ¶ 60.
- On November 18, 2020, Fuller instructed plaintiff to "learn[] a complex process . . . that was unrelated to Plaintiff's primary job duties" and "spoke to Plaintiff in a demeaning manner" when accusing him "of learning the process too slowly."  *Id.* ¶ 63.
- On November 20, 2020, Fuller informed plaintiff that disclosing his October 2020 Letter and forwarding emails about his EEO activity to coworkers was "unprofessional."  *Id.* ¶ 64.
- On November 20, 2020, Fuller told plaintiff to find another job in response to his request for a job transfer and denied plaintiff's request for an extension of time to complete an assignment.  *Id.* ¶¶ 65–66.

The allegedly adverse conduct reached its climax on December 4, 2020, when Fuller

"threatened to demote and terminate Plaintiff, and stated [in an email], 'you are responsible for

your actions and the chain of events that may follow,' in response to Plaintiff asking whether he

could engage in EEO activity."  *Id.* ¶ 67.  Upon receiving the email, plaintiff "had a complete

mental breakdown" and "requested and received a job detail."  *Id.* ¶ 68.  When time for plaintiff's mid-year performance evaluation for the 2020–2021 year arrived, Fuller issued "a false and unfavorable" evaluation and stated that plaintiff "needed to improve on communication, prioritizing projects, and working effectively with others."  *Id.* ¶ 70.

In sum, plaintiff alleges that Fuller generally "treated younger employees, female employees, and employees who have not participated in EEO activity more favorably with regard to work assignments, their ability to voice opinions regarding assignments, and due dates," in violation of the ADEA and Title VII.  *Id.* ¶ 61.

### B.    Procedural Background

Plaintiff has filed two EEO complaints, which DOT's OCR has since consolidated.  *Id.* ¶ 10.[4]  He filed his first informal complaint of age discrimination with FRA's OCR on August 4, 2019.  *Id.* ¶ 32.  FRA's OCR issued a Notice of Right to File a Discrimination Complaint on November 7, 2019, and plaintiff filed a formal complaint of discrimination with DOT's OCR, alleging retaliation based on age and sex, on November 21, 2019.  *Id.* ¶¶ 10(a), 41–42.

Plaintiff then filed his second informal complaint of age discrimination on February 3, 2020.  *Id.* ¶ 45.  A Notice of Right to File a Discrimination Complaint was issued on May 6, 2019, and plaintiff filed a formal complaint of discrimination with DOT's OCR, alleging that DOT discriminated against him in violation of Title VII and the ADEA, on May 18, 2020.  *Id.* ¶¶ 10(b), 48–49.[5]

---

[4]    The dates and details of these EEO complaints are inconsistently described within the Amended Complaint. *Compare id.* ¶ 42 (alleging that plaintiff filed a formal complaint of discrimination with DOT's OCR on November 19, 2019), *with id.* ¶ 10(a) (alleging that plaintiff filed the formal complaint on November 21, 2019).

[5]    Plaintiff's allegation that he filed a formal complaint of discrimination against DOT pursuant to Title VII and the ADEA, Am. Compl. ¶ 49, is the first time the Amended Complaint makes any reference to Title VII in the context of outlining the facts that form the basis of plaintiff's retaliation claim.  The Amended Complaint, in addition, alleges that plaintiff's second formal complaint of discrimination comprised of twenty-eight claims, *id.* ¶ 71, but does not explain what these twenty-eight claims are.

The two complaints were consolidated for administrative review on June 23, 2022.  *Id.*
¶ 10(d).  On November 3, 2022, an Equal Employment Opportunity Commission Administrative
Judge granted DOT's motion for summary judgment, which became the agency's final decision
on December 13, 2022.  *Id.* ¶ 10(f)–(g).

Plaintiff then filed, on March 10, 2023, the complaint initiating this action.  *See* Compl.,
ECF No. 1.  As amended, the complaint alleges one count of retaliation in violation of Title VII
and the ADEA based on plaintiff being "subjected to increased scrutiny, receiv[ing] negative
Performance Appraisals[] [and] lower bonus awards[,] and [being] denied promotional
opportunities."  *See* Am. Compl. ¶ 74.  Defendants, in turn, have moved for partial dismissal of
the Amended Complaint, pursuant to Rule 12(b)(6) for failure to state a claim.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "the complaint must contain sufficient
factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Wood v.
Moss*, 572 U.S. 744, 757–58 (2014) (citation omitted).  A claim is facially plausible when the
plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability"
and "allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 557 (2007)); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d
1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant
has acted unlawfully." (citation omitted)).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint,
accepting all factual allegations in the complaint as true, even if doubtful in fact, and construing
all reasonable inferences in the plaintiff's favor.  *Twombly*, 550 U.S. at 555; *see also Atchley v.*

*AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  A court, however, does not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint."  *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original accepted and citation omitted).

In general, a court must treat a Rule 12(b)(6) motion as a Rule 56 motion for summary judgment if it considers "matters outside the pleadings."  Fed. R. Civ. P. 12(d).  This conversion rule is not triggered, however, when a court considers "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice."  *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted).  This rule is also not triggered when a court considers documents attached to motions to dismiss that are referred to in the complaint and are central to the plaintiff's claim, even when the documents are produced by the defendant.  *See, e.g.*, *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (finding that "the various letters and materials produced in the course of plaintiff's discharge proceedings . . . fall under this exception and may be considered"), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002); *Saunders v. Mills*, 842 F. Supp. 2d 284, 293 n.2 (D.D.C. 2012) (considering "Letter of Counseling," which was attached to defendant's motion to dismiss, "repeatedly referenced in the Complaint," and central to plaintiff's claim that the letter was retaliatory, "without converting the motion to one for summary judgment"); *Pearson v. District of Columbia*, 644 F. Supp. 2d 23, 29 n.1 (D.D.C. 2009) (considering, on motion to dismiss, several exhibits, including memoranda, emails, and letters, attached to defendant's motion and mentioned at least once in the complaint), *aff'd*, 377 F. App'x 34 (D.C. Cir. 2010).[6]

---

[6]    For this reason, the following documents, which are attached as Exhibits 4 and 5 to defendant's motion and are referenced and quoted as central to plaintiff's claims in the Amended Complaint, may be considered: the February 2020 Letter of Counseling (Exhibit 4), *see* Def.'s Mot. to Dismiss, Ex. 4 ("Ex. 4"), ECF No. 11-5; and the October 2020 Letter of Reprimand (Exhibit 5), *see* Def.'s Mot. to Dismiss, Ex. 5 ("Ex. 5"), ECF No. 11-6.  Plaintiff

### III.     DISCUSSION

Both Title VII and the ADEA prohibit an employer from retaliating against an employee who has engaged in protected activity by complaining of employment discrimination.  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).  Whereas Title VII prohibits discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), the ADEA prohibits discrimination "based on age," 29 U.S.C. § 633a(a).

Whether brought under Title VII or the ADEA, retaliation claims trigger the familiar *McDonnell-Douglas* burden-shifting framework.  *Jones*, 557 F.3d at 677 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Tomasello v. Rubin*, 167 F.3d 612, 619 (D.C. Cir. 1999) ("[T]he test for determining retaliation under the ADEA and Title VII is identical.").  Under this framework, "a plaintiff must first establish a prima facie case of retaliation by showing (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two."  *Jones*, 557 F.3d at 677.  Although the plaintiff's burden at the prima facie stage "is not great," a plaintiff must still "establish facts adequate to permit an inference of a retaliatory motive."  *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (quoting *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984)).

### A.     The Scope of the Dispute

Plaintiff brings one combined count of retaliation under Title VII and the ADEA, but his Amended Complaint confusingly fails to identify what conduct is alleged to be protected activity and what employment action is alleged to be retaliatory.  For this reason, defendant addresses

---

does not appear to object to their consideration.  *Cf.* Pl.'s Opp'n Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 4, ECF No. 12 (citing Exhibit 2).  Whether Exhibits 1, 2, and 3 may be considered need not be resolved since neither party relies on these three exhibits in their briefing.  *See* Def.'s Mot. to Dismiss, Ex. 1, ECF No. 11-2; Def.'s Mot. to Dismiss, Ex. 2 ("Ex. 2"), ECF No. 11-3; Def.'s Mot. to Dismiss, Ex. 3, ECF No. 11-4.

most, if not all, of the factual allegations in the Amended Complaint, even those that clearly do not constitute protected activity or a materially adverse employment action. *See, e.g.*, Def.'s Mot. at 8 (arguing that plaintiff's July 11, 2019, grievance complaint, which did not allege any discrimination, much less discrimination based on plaintiff's race, color, religion, sex, national origin, or age, was not a protected activity under Title VII or the ADEA).

In opposition, plaintiff clarifies that he first engaged in ADEA-protected activity on July 15, 2019, when he told Alexy that Fuller was discriminating against him due to his age, and that he first engaged in Title VII-protected activity on November 21, 2019, when he filed his EEO complaint with DOT's OCR alleging age and gender discrimination. *See* Pl.'s Opp'n Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 5, ECF No. 12.[7]

Plaintiff's opposition, read most generously, further clarifies that he alleges only the following employment actions by Fuller (and, for the denial of a lateral transfer, by Atkisson) to be materially adverse: (1) assigning the "most important" work on the Brakes III rulemaking to another economist and reducing plaintiff's responsibilities, *id.* at 5–6; (2) retroactively changing, on August 16, 2019, plaintiff's grade for seven Economics Weekly Update reports from "Yes" to "No," *id.* at 6; (3) issuing, on December 30, 2019, an Achieved Results midterm rating to plaintiff for the 2019–2020 year, which resulted in an Achieved Results final rating for the same year, *id.*; (4) assigning plaintiff, in March 2020, to spend 20% of his time on Paperwork Reduction Act duties, *id.* at 7; (5) requiring plaintiff, on November 18, 2020, to "learn[] a complex process . . . that was unrelated to Plaintiff's job duties," *id.*; (6) issuing the February

---

[7]      In opposition, plaintiff, citing paragraph 42 of the Amended Complaint and the EEO Complaint attached as Exhibit 2 to defendant's motion, provides November 19, 2019, as the date when he filed his formal complaint of discrimination with OCR.  Pl.'s Opp'n at 4; *see also id.* at 5.  The date on the EEO Complaint, however, is November 21, 2019, *see* Ex. 2 at 1, and paragraph 10 of the Amended Complaint states that "[o]n or around November 21, 2019, Plaintiff filed a complaint of discrimination against DOT, alleging DOT discriminated against him in violation of Title VII and the ADEA," Am. Compl. ¶ 10.  In any case, this two-day difference is immaterial since no alleged adverse employment decision is said to have occurred between November 19 and 21.

2020 Letter of Counseling, *id.*; (7) telling plaintiff, in September 2020, to take a poor

communicators class, *id.* at 8; (8) denying, on September 23, 2020, plaintiff's request for a lateral

transfer, *id.*; (9) issuing the October 2020 Letter of Reprimand, *id.*; (10) emailing plaintiff recaps

of their weekly meetings, *id.*; (11) instructing plaintiff that telling his coworkers about his EEO

allegations was "unprofessional," *id.*; (12) telling plaintiff, on November 20, 2022, to find

another job in response to his request for a job transfer, *id.*; and (13) denying plaintiff's request

for an extension on an assignment, *id.*[8]  The other employment actions referenced in his

Amended Complaint are described as merely providing "context."  *Id.* at 5 (criticizing defendant

for "focus[ing] on the context Plaintiff provides").[9]

  The parties' briefing thus reveals that they agree on two crucial points that narrow the

issues in dispute.  First, the parties agree that plaintiff (1) first engaged in activity protected by

the ADEA on July 15, 2019, when he told Alexy that Fuller was discriminating against him

---

[8] Plaintiff has arguably conceded that six of these thirteen actions are not materially adverse and merely provide "context" for the February and October 2020 Letters.  *See* Pl.'s Opp'n at 7–8; *CSX Transp., Inc. v. Com. Union Ins. Co.*, 82 F.3d 478, 482–83 (D.C. Cir. 1996) (explaining that when a party fails to respond to an argument raised by another party, or even when the response is "somewhat half-hearted," the party has "waived the issue"). These contextual allegations include the following actions: (1) telling plaintiff to take a poor communicators class; (2) denying plaintiff's request for a lateral transfer; (3) recapping in email his weekly meetings with plaintiff; (4) informing plaintiff that forwarding emails about his EEO allegations to coworkers was "unprofessional"; (5) telling plaintiff to find another job in response to his request for a job transfer; and (6) denying plaintiff an extension on an assignment before Thanksgiving.  *See* Pl.'s Opp'n at 7–8 (explaining that "Fuller's materially adverse actions against Plaintiff are brought into full relief when shown in the context of the other adverse actions he was taking against Plaintiff during this time," and listing Fuller asking plaintiff to take a poor communicators class and Atkisson denying plaintiff's request for a lateral transfer as examples of such "context"); *id.* at 8 (explaining that "[v]iewed in th[e] context" of these allegations, "it is clear that Plaintiff's February 27 Letter of Counseling and October 9 Letter of Reprimand were materially adverse actions").  Yet, given the ambiguity in plaintiff's pleadings and briefing, the retaliation claims based on these six employment actions are not dismissed as conceded.  Defendant has neither argued that plaintiff has conceded these claims nor moved to dismiss the retaliation claims based on Atkisson's denial of a lateral transfer.  *See* Def.'s Mot. at 16.  Nonetheless, the claims based on Fuller telling plaintiff to take a poor communicators class, recapping their weekly meetings, criticizing plaintiff about his "unprofessional" communications, and denying plaintiff an extension are dismissed on the merits, as discussed more fully below.  *See infra* section III.B.

[9] Plaintiff has waived any retaliation claim based on the alleged threats of demotion and termination on December 4, 2020, *see* Am. Compl. ¶ 67, and based on his 2020–2021 mid-year performance evaluation, *see id.* ¶ 70, because plaintiff's opposition makes no mention of these allegations, despite defendant moving to dismiss these claims, Def.'s Mot. at 13.  *See CSX Transp.*, 82 F.3d at 482–83.

based on his age, and (2) first engaged in activity protected by Title VII on November 21, 2019,
when he filed his EEO complaint alleging age and gender discrimination with DOT's OCR.  *See*
Pl.'s Opp'n at 3–4; Def.'s Reply Supp. Mot. to Dismiss ("Def.'s Reply") at 2, ECF No. 14.
Defendant argues that any Title VII or ADEA retaliation claim based on employment actions that
occurred before these dates should thus be dismissed.  *See* Def.'s Mot. at 6.[10]

Defendant is correct.  As plaintiff recognizes, to survive a motion to dismiss, a complaint
must say that "the Government retaliated against me because I engaged in protected activity."
Pl.'s Opp'n at 9 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006)).  He is
unable to say this when the alleged retaliation occurred before the alleged protected activity.
Any ADEA retaliation claim that predated July 15, 2019, and any Title VII retaliation claim that
predated November 21, 2019, are therefore dismissed.  *See Burke v. Gould*, 286 F.3d 513, 522
(D.C. Cir. 2002) (concluding that a retaliation claim could not be based on evaluations
"conducted after [plaintiff] engaged in protected activity"); *Clemmons v. Acad. for Educ. Dev.*,
107 F. Supp. 3d 100, 132 (D.D.C. 2015) (explaining that retaliation claims fail when the
allegedly retaliatory events "pre-date" the protected activity).

Second, defendant is not seeking dismissal of plaintiff's Title VII and ADEA retaliation
claims predicated on the following allegations: (1) Fuller lowering plaintiff's performance
appraisal from the 2019–2020 performance year; (2) Fuller reassigning plaintiff to Paperwork
Reduction Act duties in March 2020; (3) Atkisson denying plaintiff's request for a lateral

---

[10]     Defendant also argues that plaintiff's July 11, 2019 meeting with Fuller and Alexy was not a protected
activity under Title VII or the ADEA, and that plaintiff's July 15, 2019 complaint to Alexy, his August 2, 2019
email to Alexy, and his August 4, 2019 informal EEO complaint are not protected activities under Title VII.  *See*
Def.'s Mot. at 8–9.  Plaintiff concedes each of these points and agrees that plaintiff first engaged in ADEA-protected
activity on July 15, 2019, and in Title VII-protected activity on November 21, 2019.  *See* Pl's Opp'n at 3–4
(explaining that the Amended Complaint's reference to the July 11, 2019 meeting was to provide context for the
July 15, 2019 meeting; and acknowledging that in the July 15, 2019 meeting, August 2, 2019 email, and August 4,
2019 informal EEO complaint, he alleged only age discrimination).

transfer on September 23, 2020; and (4) Fuller denying plaintiff a GS-14 promotion since

November 21, 2019, nor the ADEA retaliation claims predicated on Fuller allegedly:

(5) providing a time-off award instead of a cash award on August 17, 2019; and (6) denying

plaintiff a GS-14 promotion between July 15, 2019, and November 21, 2019, including the

events regarding the Brakes III rulemaking.  Def.'s Mot. at 10, 16.  Each of these claims thus

remains pending.

In sum, concessions from each side leave retaliation claims based on the following

allegedly adverse actions at issue: Fuller (1) retroactively changing plaintiff's grade for seven

Economics Weekly Update reports from "Yes" to "No" on August 16, 2019; (2) requiring

plaintiff to "learn[] a complex process from [another] employee that was unrelated to Plaintiff's

job duties" on November 18, 2020; (3) issuing the February 2020 Letter; (4) telling plaintiff to

take a poor communicators class in September 2020; (5) issuing the October 2020 Letter;

(6) emailing plaintiff recaps of their weekly meetings; (7) instructing plaintiff not to disclose his

Letter of Reprimand to his coworkers and telling plaintiff that forwarding emails about his EEO

allegations to his coworkers was "unprofessional"; (8) telling plaintiff to find another job in

response to his request for a job transfer on November 20, 2022; and (9) denying plaintiff's

request for an extension on an assignment.

### B.    Material Adverse Action

Actional adverse actions in Title VII and ADEA claims must be "materially adverse" in

an "objective" sense.  *Chambers v. District of Columbia*, 35 F.4th 870, 877 (D.C. Cir. 2022) (en

banc); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1196–97 (D.C. Cir. 2008) (Kavanaugh, J.)

(treating Title VII and ADEA alike for determining whether employment action is materially

adverse).  "A materially adverse action is one that 'could well dissuade a reasonable worker from

making or supporting a charge of discrimination.'" *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington*, 548 U.S. at 67.

The purpose of the "material" requirement is "to separate significant from trivial harms." *Id.* at 68. Discrimination laws do not "set forth a general civility code for the American workplace," and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* (citation omitted). "Typically, a materially adverse action in the workplace involves a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits," *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (citation omitted), but whether an employment action is objectively materially adverse "often depend[s] upon the particular circumstances," *Burlington*, 548 U.S. at 69.

As summarized above, *see supra* section III.A, retaliation claims based on the following nine employment actions by Fuller remain in dispute: (1) changing plaintiff's seven Economics Weekly Update reports grades; (2) requiring plaintiff to learn a new complex process and telling him off for being slow; (3) the February 2020 Letter; (4) telling plaintiff to take a poor communicators class; (5) the October 2020 Letter; (6) emailing plaintiff recaps of their weekly meetings; (7) telling plaintiff that talking to his coworkers about his EEO allegations was "unprofessional"; (8) telling plaintiff to find another job in response to his request for a job transfer; and (9) denying plaintiff's request for an extension for an assignment. Defendant organizes these allegations into three categories: (1) the February and October 2020 Letters;

(2) informal criticisms; and (3) the denial of plaintiff's request for an extension, and argues that none constitute materially adverse employment actions. *See* Def.'s Mot. at 11. For simplicity, these categories are adopted here and addressed *seriatim*.

At the outset, plaintiff notably offers no individualized responses to defendant's arguments, taking the position, instead, that an individualized analysis of whether every alleged employment action is materially adverse is not necessary and criticizing defendant for "attempt[ing] to parse various factual allegations from the Amended Complaint into different retaliation 'claims,'" where plaintiff brings "a singular claim for retaliation under Title VII and the ADEA." Pl.'s Opp'n at 2–3.[11] In plaintiff's view, all the alleged adverse actions should be considered to determine whether, taken together, they would dissuade an employee from engaging in protected activity. *Id.* Plaintiff cites no legal authority for this position, which runs contrary to well-settled law that "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *see also id.* at 122 (distinguishing "discrete discriminatory or retaliatory acts" from claims of a hostile work environment, which can comprise of acts that "are part of the same unlawful employment action"). When analyzing retaliation claims, a court must thus "analyze *each* alleged adverse action, individually, to determine whether it constitutes an action that may be the basis for . . . a retaliation claim in the circumstances of this case." *Jones*

---

[11] By failing to address each adverse employment action and focusing on them collectively, plaintiff has arguably conceded that each action, considered individually, does not constitute a materially adverse action sufficient to sustain a retaliation claim. At the same time, however, defendant, while meaningfully arguing that the February 2020 and October 2020 Letters, and the denial of plaintiff's request for an extension for an assignment are not actionable adverse actions, *see* Def.'s Mot. at 11–15, fails to do the same for the other employment actions by lumping them together as "other instances of informal criticisms or threats of demotion or termination," and referencing the allegations that constitute these "informal criticisms" only in passing by including a string cite to the relevant paragraphs of the Amended Complaint in a parenthetical, without offering analysis specific to the facts of this case, *id.* at 13. Thus, rather than conclude that plaintiff has conceded that each of these actions, standing alone, are not actionable, they are considered on their merits.

*v. Castro*, 168 F. Supp. 3d 169, 179 (D.D.C. 2016); *see also Burlington*, 548 U.S. at 54 (referring

to a single "challenged action" as the subject of a retaliation claim).

1.     ***The February and October 2020 Letters***

"A reprimand letter setting forth allegations of deficient work performance is not a

materially adverse action absent a showing that the letter would have dissuaded a reasonable

employee from engaging in protected activity."  *Durant v. Dist. of Columbia Gov't*, 875 F.3d

685, 698 (D.C. Cir. 2017); *see also Baloch*, 550 F.3d at 1199 (explaining that letters of

counseling, letters of reprimand, and unsatisfactory performance reviews are not materially

adverse actions when they "contain[] no abusive language, but rather job-related constructive

criticism, which can prompt an employee to improve her performance" (citation omitted)).  For

this reason, "[a] letter of counseling, written reprimand, or unsatisfactory performance review, if

not abusive in tone or language or a predicate for a more tangible form of adverse action, will

rarely constitute [a] materially adverse action."  *Hyson v. Architect of Capitol*, 802 F. Supp. 2d

84, 102 (D.D.C. 2011).

Neither the February 2020 Letter nor the October 2020 Letter, therefore, are materially

adverse actions.  The only allegation in the Amended Complaint about the February 2020 Letter

is that "Fuller issued Plaintiff a Letter of Counseling regarding Plaintiff's alleged discourteous

conduct while discussing work-related issues" and "advised Plaintiff that Plaintiff's failure to

correct his conduct may subject him to severe disciplinary or adverse action, including removal

from Federal service."  Am. Compl. ¶ 46.  Plaintiff does not allege that the letter contains any

abusive language or that any change in grade, salary, or other benefit accompanied the letter.

Rather, plaintiff seems to concede that the letter provided job-related constructive criticism about

plaintiff's "alleged discourteous conduct will discussing work-related issues."

15

Plaintiff also fails to show how, if at all, the February 2020 Letter predicated some other more serious and tangible retaliatory action.  Rather, the letter stated that plaintiff's "failure to correct his conduct *may* subject him to severe disciplinary or adverse action," *id.* (emphasis added), making clear that "disciplinary action was not forthcoming as a result of its issuance," *Hyson*, 802 F. Supp. 2d at 102.  "[M]ere speculation that a letter of reprimand *may* lead to future punishment is insufficient to establish an adverse employment action."  *Hyson*, 802 F. Supp. 2d at 102 (citation omitted); *see also Russell v. Principi*, 257 F.3d 815, 819–20 (D.C. Cir. 2001) ("[A]n unrealized risk of future adverse action, even if formalized, is too ephemeral to constitute an adverse employment action."); *Baloch*, 550 F.3d at 1199 (concluding that proposed suspensions not actually served were not adverse actions).  Put differently, the mere existence of such warning does not transform an otherwise appropriate feedback letter into a materially adverse action.  *See, e.g.*, *Baloch*, 550 F.3d at 1199 (concluding that letter of reprimand warning plaintiff that "future repetitions of this conduct or other misconduct could lead to a proposal of more severe disciplinary actions against you up to and including removal from your employment with the Bureau of Indian Affairs," ECF No. 20-15, was not a materially adverse employment decision); *Toomer v. Carter*, No. 11-cv-2216, 2016 WL 9344023, at *25 (D.D.C. Mar. 24, 2016) (concluding that letter of reprimand that warned plaintiff that future violations of the policies might subject her to more discipline was not an adverse action), *aff'd*, No. 20-5184, 2022 WL 301561 (D.C. Cir. Jan. 21, 2022); *Hyson*, 802 F. Supp. 2d at 102 (concluding that a letter of counseling that warned "if this happens again, we will take the appropriate action" was not an adverse action because "the memorandum itself made clear that disciplinary action was not forthcoming" (alteration in original accepted)); *Herbert v. Architect of Capitol*, 766 F. Supp. 2d 59, 75 (D.D.C. 2011) (concluding that letter of reprimand addressing employee's "failure to

follow a supervisor's directive, and unprofessional and discourteous conduct" was not materially adverse (alteration in original accepted)).[12]  In fact, when plaintiff continued his allegedly discourteous conduct, Fuller merely issued the October 2020 Letter.  Am. Compl. ¶¶ 58–59.

For substantially the same reasons, the October 2020 Letter does not constitute a materially adverse action.  The only allegation in the Amended Complaint about the October 2020 Letter quotes the letter as stating, in part, "I am placing you on notice that you[r] behavior needs to change immediately and I expect you will take appropriate corrective action to ensure there is improvement and another incident does not occur.  Your failure to follow these instructions, may subject you to more severe disciplinary or adverse action, up to and including removal from Federal service."  *Id.* ¶ 59.[13]  Plaintiff does not allege that the October 2020 Letter contained any abusive language or resulted in financial harm, or otherwise explain how the letter would have dissuaded a reasonable employee from engaging in protected activity.  That the letter informed plaintiff that his "behavior needs to change immediately," and that "failure to follow these instructions may" lead to "more severe disciplinary or adverse action," *id.*, is insufficient, as explained above, to transform this routine and professional letter that "merely informed

_____

[12]    Plaintiff's retaliation claim based on the February 2020 Letter may be dismissed on the pleadings alone, but review of the letter, attached to defendant's motion as Exhibit 4, reinforces this conclusion.  The text of the February 2020 Letter explains that plaintiff's "recent discourteous conduct" prompted the letter for the purpose of "reaffirm[ing] [Fuller's] expectations regarding [plaintiff's] conduct while on duty" and makes clear that the letter "is not a disciplinary action" and "will not be placed in [his] official personnel file."  Ex. 4 at 1.  Then, in a professional and reasonable tone, the letter describes plaintiff's recent conduct, puts plaintiff "on notice that [his] behavior needs to change," and cautions plaintiff that "failure to follow these instructions and/or correct [his] conduct may subject [him] to more severe disciplinary or adverse action."  *Id.* at 1–2.  This February 2020 Letter, which is significantly less harsh than the one at issue in *Baloch*, does not rise to the level of a materially adverse employment action sufficient to sustain a retaliation claim.

[13]    Similarly, review of the October 2020 Letter, attached to defendant's motion at Exhibit 5, reinforces the conclusion that it is not a materially adverse action.  The letter simply summarizes plaintiff's conduct and explains why Fuller believes such conduct to be inappropriate and discourteous.  *See* Ex. 5 at 1.  Then, again, the letter puts plaintiff "on notice that [his] behavior needs to change immediately" and that "failure to follow these instructions, may subject [him] to more severe disciplinary or adverse action."  *Id.* at 2.  Although the October 2020 Letter was placed in plaintiff's personnel folder for one year, this fact alone is insufficient to make it a materially adverse action.  *See, e.g.*, *Herbert*, 766 F. Supp. 2d at 75 (citing *Baloch*, 550 F.3d at 1199).

[plaintiff] of 'specific deficiencies regarding his conduct' . . . and warned him that future violations would result in corrective or adverse action," *Durant*, 875 F.3d at 698 (alterations in original accepted and citation omitted), into a materially adverse action.  *See Saunders*, 842 F. Supp. 2d at 293–94 (cataloguing cases and concluding that letter of counseling that warned plaintiff that her conduct "will not be tolerated in the future" was not materially adverse).

### 2.      *Informal Criticisms and Minor Annoyances*

The antiretaliation provisions of Title VII and the ADEA protects neither "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, . . . jokes, and occasional teasing," "petty slights or minor annoyances that often take place at work and that all employees experience," nor "personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers."  *Burlington*, 548 U.S. at 68 (citations omitted).  Defendant correctly identifies several instances as merely informal criticisms and minor annoyances rather than materially adverse actions, including Fuller (1) telling plaintiff off for learning "a complex process" unrelated to plaintiff's job too slowly, *id.* ¶ 63; (2) criticizing plaintiff for being a poor communicator, *id.* ¶¶ 54, 62; (3) emailing plaintiff recaps of their weekly meetings, *id.* ¶ 60; and (4) informing plaintiff that telling his coworkers about his EEO activity was "unprofessional," *id.* ¶ 64.  These amount to "petty slights" and do not constitute "reason[s] for th[e] [C]ourt to engage in judicial micromanagement of business practices by second-guessing employers' decisions." *Kline v. Berry*, 404 F. App'x 505, 506 (D.C. Cir. 2010); *see also Taylor v. Mills*, 892 F. Supp. 2d 124, 147 (D.D.C. 2012) (cataloguing cases, and concluding that "criticism of the plaintiff's job performance," delivered by "conference call," did not "qualify as an adverse employment action" because "[e]mployers are generally able to provide constructive criticism of their employees without running afoul of Title VII"); *Harris v. Mayorkas*, No. 21-cv-1083, 2022 WL 3452316, at

*11 (D.D.C. Aug. 18, 2022) (cataloguing cases concluding that "[y]elling, rude comments, disparaging remarks, and statements that embarrass a claimant in front of coworkers are, even though uncivil and objectionable, not actional bases for Title VII retaliation claims").  Plaintiff offers no reason why these seemingly petty slights, while perhaps offensive to him, rise to the level of materially adverse actions.  *See Burlington*, 548 U.S. at 68 (explaining that "normally petty slights, minor annoyances, and simple lack of good manners will not" "deter victims of discrimination from complaining to the EEOC, the courts, and their employers" (citation omitted)).  He does not, for example, allege that he was deterred from engaging in EEO activity, or that any of this criticism produced (or could have produced) any tangible injury or harm.

Two of the employment decisions that defendant characterizes, in passing and with little to no reasoning, as "informal constructive criticisms," however, could, at the motion to dismiss stage, constitute materially adverse employment actions.  First, Fuller's retroactive changing of plaintiff's grade for seven Economics Weekly Update reports from "Yes" to "No" could constitute a materially adverse action.  Am. Compl. ¶¶ 33–36.[14]  An unfavorable performance review can rise to the level of a materially adverse action if it affects an employee's "position, grade level, salary or promotion opportunities."  *Baloch*, 550 F.3d at 1199; *see also Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007) (concluding that "a lower overall performance rating in 1999 than in past years" was an adverse action).  Plaintiff alleges that the grades that an economist receives for these weekly reports are used to determine one of the four job elements that affects an employee's final job rating.  Am. Comp. ¶ 34.  Specifically, "[a]t years end, the number of 'Yes's and 'No's that an Economist received are added up and divided by the weeks

---

[14]     For the reasons explained, *see supra* section III.A, any Title VII claim based on this alleged retroactive changing of plaintiff's grades is dismissed because these events allegedly occurred on August 16, 2019, *i.e.*, before plaintiff first engaged in activity protected by Title VII.

worked to calculate a percentage score," and any economist who receives fewer than a certain percentage of "Yes" ratings receives an "Unacceptable" grade for one of the job elements.  *Id.* ¶ 35.  Receiving an "Unacceptable" on one job element could have detrimental effects on the final rating, which in turn could affect an economist's annual bonus and may "serve as a basis for adverse actions including suspensions, demotion, or termination."  *Id.* ¶¶ 22, 36.  Fuller's decision to change seven of plaintiff's grades from "Yes" to "No" could have thus affected plaintiff's position, salary, or promotion opportunities.

Second, Fuller telling plaintiff to find another job in response to his request for a job transfer on November 20, 2022, could constitute a materially adverse action.  *Id.* ¶ 65.  The denial of transfer may, in certain circumstances, constitute a materially adverse action, such as when plaintiff suffers a decrease in pay, benefits, or some other tangible injury.  *See Roebuck v. Washington*, 408 F.3d 790, 794 (D.C. Cir. 2005); *see also Morgan*, 536 U.S. at 114 (listing "denial of transfer" as an example of a "[d]iscrete act" that may constitute an "actionable unlawful employment practice" (internal marks omitted)).  Here, plaintiff alleges that Fuller denied his job transfer and, instead, told him to find another job.  To dismiss plaintiff's retaliation claims based on this denial without the benefit of discovery would be premature.

### 3.      *Denial of Extension on Assignment*

Fuller's single instance of denying plaintiff an extension of a deadline for an assignment does not constitute a materially adverse action.  To be sure, "frequently tightening deadlines" can, in some circumstances, be considered materially adverse.  *Allen v. Napolitano*, 774 F. Supp. 2d 186, 203 (D.D.C. 2011); *see Morales v. Gotbaum*, 42 F. Supp. 3d 175, 198 (D.D.C. 2014) ("[T]he shortened deadlines or increased work must be frequent or particularly onerous to be material; otherwise they are *de minimis* and 'trivial.'").  Here, however, plaintiff does not allege

that Fuller repeatedly denied extensions on assignments to plaintiff or explain why the deadlines
at issue were unreasonable.  *See, e.g.*, *Harris*, 2022 WL 3452316, at *12 (granting defendant's
motion to dismiss plaintiff's allegations that supervisor gave her unreasonable and impossible
deadlines where there was "only one, specific day on which Plaintiff alleges she was given such
assignments"); *Allen*, 774 F. Supp. 2d at 203 (dismissing retaliation claim based on allegation
that plaintiff "received unreasonable deadlines for completing time-sensitive assignments"
because plaintiff alleged only "a few instances" of unreasonable deadlines and did not "allege[]
that meeting her deadlines was often impossible, that her workload increased dramatically or that
she was buried in work").  One instance of denying an extension is barely a slight and certainly
does not rise to the level of a materially adverse action sufficient to sustain a retaliation claim.

## IV.   CONCLUSION

To summarize, defendant's partial motion to dismiss the ADEA retaliation claims
predicated on alleged conduct that predated July 15, 2019, and the Title VII retaliation claims
predicated on alleged conduct that predated November 21, 2019, is granted.  In addition,
defendant's partial motion to dismiss the Title VII and ADEA retaliation claims that relate to the
following alleged employment actions, which are not materially adverse, is granted: (1) the
criticisms of plaintiff's slow learning of a complex process unrelated to his duties, *see* Am.
Compl. ¶ 63; (2) the February 2020 Letter, *see id.* ¶ 46; (3) the criticism of plaintiff's
communication skills, *see id.* ¶¶ 54, 62; (4) the October 2020 Letter, *see id.* ¶¶ 58–59; (5) the
emailing of recaps of Fuller and plaintiff's weekly meetings to plaintiff, *see id.* ¶ 60; (6) the
criticism of plaintiff as "unprofessional" for forwarding emails about his EEO allegations to his
coworkers, *see id.* ¶ 64; and (7) the denial of plaintiff's request for an extension on an
assignment, *see id.* ¶ 66.  Finally, defendant's partial motion to dismiss the Title VII and ADEA

retaliation claims based on the alleged threats made, on December 4, 2020, of demotion and termination, *see id.* ¶ 67, and plaintiff's 2020–2021 mid-year performance evaluation, *see id.* ¶ 70, is granted, as waived by plaintiff, who failed to address either allegation in opposition.

Defendant's partial motion to dismiss is otherwise denied, with the result that plaintiff's Title VII and ADEA retaliation claims based on Fuller's denial of plaintiff's request for a job transfer on November 20, 2022, *see id.* ¶ 65, and the ADEA retaliation claim based on Fuller's alleged retroactive changing of plaintiff's grade for seven Economics Weekly Update reports from "Yes" to "No," *id.* ¶¶ 33–36, may proceed.

For clarity, defendant has not sought dismissal of the Title VII and ADEA retaliation claims relating to (1) plaintiff's lowered performance appraisal from the 2019–2020 performance year; (2) his reassignment to Paperwork Reduction Act duties in March 2020; (3) the denial of his request of a lateral transfer on September 23, 2020; and (4) any denial of a GS-14 promotion since November 21, 2019, nor the ADEA retaliation claims based on (5) the provision of a time-off award instead of a cash award on August 17, 2019; and (6) any denial of a GS-14 promotion between July 15, 2019, and November 21, 2019, including the events regarding the Brakes III rulemaking.  *See* Def.'s Mot. at 10, 16.  Each of these claims thus also remains pending.

Accordingly, for the foregoing reasons, defendant's Partial Motion to Dismiss, ECF No. 11, is **GRANTED IN PART** and **DENIED IN PART**.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date:   November 28, 2023

_____
**BERYL A. HOWELL**
United States District Judge